Jasen, J.
(dissenting in part and concurring in part). The majority holds that CPL 470.20 (subd 6) prohibits the prosecution from being afforded an opportunity to withdraw its consent to a plea agreement after the Appellate Division has reduced the agreed-upon sentence as excessive, even though the prosecutor expressly conditioned his consent upon the imposition of the original sentence.
While I agree that the Appellate Division is empowered to reduce a plea as excessive, I do not believe that the neW plea arrangement which emerges from the Appellate Division’s modification can be enforced without the consent of the People. I, therefore, respectfully dissent.
It should be noted at the outset that this is not a case where the power of the Appellate Division to modify an unduly harsh or illegal sentence and impose a legally authorized lesser sentence is at issue. I agree completely with the majority that CPL 450.10 (subd 2), 470.15 (subd 4, par [c]), 470.15 (subd 6, par [b]) and 470.20 (subd 6) specifically grant the Appellate Division those powers. But that is all they do. Contrary to the majority’s position, those provisions were not intended to nor do they speak to the question of what effect the exercise of the Appellate Division’s power to modify a sentence has on a plea agreement, the prosecutor’s consent to which was expressly conditioned on the defendant receiving the original agreed-upon sentence.
Inasmuch as the issue presented on this appeal only relates to the effect of a modified sentence on defendant’s plea and the prosecutor’s conditional consent thereto, the majority’s reliance on CPL article 470 (entitled Appeals-Determination Thereof) is entirely misplaced.
It is CPL article 220 (tit J) which sets forth the law to be applied to this case. CPL 220.10 (subds 3, 4) state specifically that the consent of the court and the People is required before a defendant may enter a plea to a lesser *523 offense. It logically and necessarily follows, therefore, that where, as here, the People’s consent to a plea is conditioned, in the first instance, upon the defendant receiving a specific sentence, the subsequent invalidation of that condition also effectively invalidates the People’s consent, nunc pro tunc. That being so, the statutory requirement that the People consent to all plea agreements before they can be enforced has not been satisfied (People v Ciccone, 91 AD2d 688, 689-690) and the People must be given an opportunity to formally withdraw their consent to what has become, in effect, a new agreement (People v Farrar, 52 NY2d 302, 307). If no prejudice would result to the defendant by withdrawal of the People’s consent, the People’s application must be granted, the plea must be vacated and the parties must be returned to status quo ante. (Id., at p 308.)
In addition to disregarding the obvious intent of the Legislature in enacting CPL 220.10 (subds 3, 4), the majority also ignores the rationale of this court’s recent decision in People v Farrar (52 NY2d 302, supra). While it is true that in Farrar we only addressed the question of what the trial court, as opposed to an appellate court, must do when it alters a condition of a plea, the rationale of that case is clearly applicable here. Indeed, the majority gives no reason, based on policy or otherwise, why the rationale of Farrar should not control this case.
In Farrar, this court held that: “Where the record shows that the prosecutor’s consent to a plea is premised on a negotiated sentence and a lesser sentence is later deemed more appropriate, the People should be given the opportunity to withdraw their consent. However justified the court’s unwillingness to impose the negotiated sentence, fairness dictates that this avenue be left open.” (People v Farrar, supra, at pp 307-308.) This holding was based on three distinct lines of reasoning which are clearly applicable to this appeal, each of which will be discussed seriatim.
First, it was reasoned that “a joint consent procedure prevents abuse”. (Id., at p 307.) This concern reflects the fear that a sentencing court will use its power to impose sentence unwisely and thereby change the terms of a plea arrangement despite the prosecutor’s protest. This fear is *524 at least as justified where, as here, it is the Appellate Division which modifies the sentence.[1] Indeed, because a reviewing court lacks some of the first-hand knowledge of the case, has only a sterile record to review and has not had the opportunity to observe the defendant, the sentencing court is given great deference in its decision. (Labbe, Appellate Review of Sentences: Penology on the Judicial Doorstep, 68 J Grim L & Criminology 122; People v Junco, 43 AD2d 266, affd 35 NY2d 419, cert den 421 US 951; People v Notey, 72 AD2d 279, 282.) The limited nature of appellate review of sentencing decisions is a recognition of this principle. (People v Suitte, 90 AD2d 80, 85.) It is clear, therefore, that the concern expressed in Farrar, that the court which modifies a sentence may do so unwisely, is as evident, if not more so, where an appellate court, which is in a worse position than the sentencing court to evaluate the circumstances of the defendant, the threat he poses to society and the chance of his being rehabilitated, is the one which alters the sentence.
The second line of reasoning upon which the Farrar decision is based is a recognition of “the prosecutor’s independent role and interest concerning the course the prosecution will take.” (People v Farrar, 52 NY2d 302, 307, supra.) There can be no serious dispute that this important concern is equally affected whether it is the sentencing court or an appellate court which unilaterally modifies the original sentence, upon which the prosecutor’s consent to the plea was conditioned.
The third prong of the majority’s reasoning in Farrar was centered on insuring fairness to the prosecutor.[2] The result reached by the majority goes beyond what fairness requires. The parties entered into an agreement whereby defendant, who was indicted for murder in the second degree and criminal possession of a weapon in the second *525 degree, was allowed to plead guilty to manslaughter in the first degree. A sentence of 8V3 to 25 years’ incarceration was agreed upon by defendant and the prosecutor. The court, believing the sentence to be fair, accepted the plea. Defendant then appealed the sentence as excessive, as he had a clear right to do, and the Appellate Division reduced it. Just as the possibility existed in Farrar, the People here were deprived of a material condition of the plea agreement by the court’s action. If fairness required that the prosecutor be given an opportunity to withdraw his consent in Farrar, as it did, the same result should follow here where the identical fact situation exists except that the People in the case before us were deprived of a material condition of the plea bargain by an appellate court, rather than the sentencing court. In either case, it is grossly unfair to allow the defendant to strike a favorable bargain and then allow him to challenge those portions which are not to his benefit, and which result in the People being deprived of a material benefit of the agreement — the originally agreed-upon sentence — while precluding the People from formally withdrawing their consent to the new arrangement. The distinction between which court modified the agreement is irrelevant because it in no way alters that prong of the rationale of Farrar which holds that fairness dictates that the People be given an opportunity to withdraw their consent.
The language used by this court in Farrar in pointing out the error of the Appellate Division in that case is equally applicable to the case before us. The majority “fail[s] to recognize the prosecutor’s right to withdraw consent to the plea in the event that the sentence to be imposed is less than originally negotiated by the parties. The legislative policy of this State is to require the consent of the court and prosecutor to a plea to a lesser included offense or to less than the entire indictment (see CPL 220.10, subds 3, 4).” (People v Farrar, supra, at p 307.)
I would hold, as the Appellate Division did, that the case should be remitted to Criminal Term for further proceedings, at which the People should be afforded the opportunity to withdraw their consent to the plea agreement. Should the People opt for a withdrawal, the defendant’s *526 guilty plea should be vacated, and a new plea entered. Should the People decline to withdraw their consent to the plea arrangement as modified by the Appellate Division, then Criminal Term shall modify the sentence accordingly.
Finally, I concur in the majority’s holding that the Appellate Division’s exercise of discretion in reducing the sentence involves a type of discretion not reviewable by this court.
Accordingly, I would affirm the order of the Appellate Division.
Chief Judge Cooke and Judges Jones, Meyer, Simons and Kaye concur with Judge Wachtler; Judge Jasen dissents in part and concurs in part and votes to affirm in a separate opinion.
Order modified in accordance with the opinion herein and, as so modified, affirmed.

. Perhaps the best proof of the correctness of this statement is exemplified by the fact that the Appellate Division below decided, contrary to the decision of the sentencing Judge and the belief of both the defendant and the prosecutor, that a minimum term of 8Vs years’ incarceration was excessive where the defendant intentionally shot a 17-year-old boy in the head and killed him. The Appellate Division believed a term of 3Vs to 10 years was more appropriate.

. It is important to note, as the court in Farrar did in a footnote at page 308, that the same considerations would inure to the benefit of the defendant if the court determined that the sentence agreed upon was inappropriate because it was not severe enough.